IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Juanita Pedelose,	Case No. 3:16CV58

    Plaintiff

    v.	**ORDER**

Commissioner of Social Security,

    Defendant

This is a Social Security case in which the plaintiff, Juanita Pedelose, appeals from the Commissioner's decision denying her application for benefits.

An administrative law judge found that Pedelose suffered from multiple severe impairments, including "status post right rotator cuff repair, lumbar disc disease with radiculopathy status post-surgery," and carpal tunnel syndrome. (Doc. 10 at 97). Nevertheless, the ALJ concluded that Pedelose had the residual functional capacity to perform light work with certain restrictions, such that she was not disabled.

Pending is Magistrate Judge Burke's Report and Recommendation, which recommends that I vacate the ALJ's decision and remand the case to the Commissioner for further proceedings. (Doc. 16).

The Magistrate Judge ruled that the ALJ did not give good reasons for according only "limited weight" to the opinion of Pedelose's treating orthopedist, Dr. Mustafa Khan. Magistrate

Judge Burke also found that the ALJ's assessment of Pedelose's credibility was insufficiently clear to permit her to determine whether substantial evidence supported that assessment.

The Commissioner has filed objections (Doc. 17), and Pedelose has responded (Doc. 18).

For the following reasons, I respectfully reject the R&R, sustain the Commissioner's objections, and affirm the denial of benefits.

## Discussion

Because the Commissioner has objected, I conduct a de novo review of those parts of the R&R to which she objected. 28 U.S.C. § 636(b)(1). I presume the reader's familiarity with the R&R and proceed directly to the Commissioner's objections.

### A. Dr. Khan's Opinion

Dr. Khan is an orthopedic surgeon who performed surgeries for Pedelose's carpal-tunnel syndrome and lower-back issues. (Doc. 11 at 16).

In May, 2014, Khan prepared a work-restriction report that imposed severe restrictions on Pedelose's ability to work. (Doc. 10 at 747). The ALJ assigned only limited weight to this opinion, and ultimately imposed lighter restrictions, because "it is not supported by exam findings, imaging or records showing improvement." (*Id.* at 104).

The Magistrate Judge held that this "conclusory" explanation violated the treating-physician rule:

> the ALJ's conclusory statement as to why Dr. Khan's May 13, 2014, opinion is entitled to only "limited weight" falls short of insuring that the procedural requirements of the treating physician rule were met in this case. While the ALJ discussed Pedelose's treatment history prior to weighing the opinion evidence, without a more complete explanation by the ALJ as to what records she found showed improvement in Pedelose's back impairment, the undersigned is left to speculate or engage in *post hoc* rationalization. Further, although the ALJ states that

2

> treatment notes reflect that Pedelose improved during physical therapy (Tr. 98, citing Exhibits 17F and 27F, pp. 23-24), it is not clear that the cited records demonstrate improvement with respect to Pedelose's back impairment. For example, Exhibit 17F (Tr. 613-627) contains a treatment note following Pedelose's shoulder surgery, which indicates that Pedelose was progressing well with physical therapy but the treatment note also indicates that Pedelose had consulted with Dr. Khan and was scheduled for back surgery in upcoming weeks (Tr. 614). Also, Exhibit 27F, pp. 23-24 (Tr. 770-771) is not a note reflecting improvement with physical therapy. Rather, it is a May 14, 2014, operative report regarding bilateral sacroiliac joint injections that Dr. Khan administered because Pedelose was reporting pain in her bilateral sacroiliac joints.
>
> Here, the reasons offered by the ALJ for not providing controlling weight to Dr. Khan's May 13, 2014, opinion are not sufficiently specific to allow the undersigned to conduct a meaningful review in order to determine whether the ALJ's reasons are "good reasons." Thus, the undersigned is unable to conclude that there is substantial evidence to support the ALJ's decision.

(Doc. 16 at 34–35).

As the Magistrate Judge explained, an ALJ who gives less than controlling weight to a treating source's opinion must give "good reasons" for doing so. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011).

The Commissioner objects on the ground that, given the severe limitations that Dr. Khan assessed in Pedelose's case, "one would expect to find a similar level of limitation recorded in Dr. Khan's treatment notes. However, Dr. Khan's treatment notes do not include any examination findings that would support his highly restrictive opinion." (Doc. 17 at 2).

Concurring with that assessment, I hold that the ALJ gave "good reasons" for discounting Dr. Khan's opinion.

3

Here, the ALJ focused on the supportability of Dr. Khan's opinion, *see* 20 C.F.R. § 404.1527(c)(3), and found that three sources of relevant information – his treatment notes, imaging records, and records of Pedelose's improved condition – did not support his opinion.

This was a good and sufficiently clear basis for discounting Dr. Khan's opinion.

First, the contents of Khan's treatments notes do not correspond to the drastic limitations he imposed – namely that Pedelose could sit, stand, or walk for no more than one hour each work day. (Doc. 10 at 774, 789, 792, 795, 801). Indeed, while Pedelose's response to the Commissioner's objection cites the many treatment records that Dr. Khan generated, it does not identify even one record or note that supports the limitations Khan imposed. (Doc. 18 at 2–3).

Second, the imaging studies in the record do not support Dr. Khan's opinion.

As the Commissioner explains, a November, 2012, MRI showed no evidence of disc herniation or significant central canal narrowing. (Doc. 10 at 509). An x-ray taken in February, 2013 – and one that the ALJ discussed (*id.* at 102) – showed that Pedelose's lumbar spine was stable. (*Id.* at 562). And as the ALJ also noted, a May, 2014, EMG study revealed mild abnormalities in the L-5 area of the right side of Pedelose's back, but a neurologist who read the EMG did not detect any neuropathy and was unable to explain Pedelose's symptoms based on the study. (*Id.* at 745).

For his part, Dr. Khan neither relied on nor addressed these studies.

Because these two reasons are sufficiently clear and consistent with the record as a whole, I conclude that the ALJ discharged her obligation to give "good reasons" to discount Dr. Khan's opinion. *Gayheart*, *supra*, 710 F.3d at 376; *Cole*, *supra*, 661 F.3d at 937.

To be sure, as the Magistrate Judge found and the Commissioner concedes (Doc. 17 at 3), the ALJ cited evidence that did not support her conclusion that Khan's opinion was inconsistent with

4

medical records that "showing improvement" in Pedelose's condition. However, this error was harmless given the two valid reasons the ALJ gave for discounting Khan's opinion, as well as the absence of any treatment records establishing that Pedelose's back condition imposed disabling limitations. (Doc. 10 at 101–02).

### B. Pedelose's Credibility

Pedelose alleged that, due to her multiple impairments, she was "unable to lift much of anything," and that she had "problems with getting around, squatting, bending, reaching, walking and prolonged standing." (Doc. 10 at 101).

But the ALJ concluded that Pedelose's impairments did not impose disabling limitations:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(*Id.* at 100).

The Magistrate Judge concluded that this was an insufficient explanation:

> The ALJ's conclusory reference to "reasons explained in this decision" requires the Court to search through the decision to determine what reasons were given for discounting Pedelose's credibility and then determine whether those reasons are supported by substantial evidence. Elsewhere in the decision, the ALJ noted that treatment notes reflected gains during physical therapy. Tr. 98 (citing Exhibits 17F; 27F, pp. 23-24). This is one apparent reason provided by the ALJ for finding Pedelose's spine condition not as disabling as alleged. Tr. 98. However, as discussed above with respect to Pedelose's treating physician argument, the portions of the record cited by the ALJ do not support the ALJ's finding that there were gains made with physical therapy relating to Pedelose's lumbar condition. The ALJ also stated that Pedelose's allegations were not consistent with records following her surgery because a neurologist observed no neuropathy on a May 2014 EMG study and could not explain Pedelose's symptoms based on the date of that study. Tr. 98 (citing Exhibit 24F (Tr.733-741)). However, while the neurologist observed no neuropathy and was unable to explain Pedelose's complaints, the neurologist also noted that the

5

> study showed mild abnormalities in the L5 area. Tr. 741. The ALJ noted these mild abnormalities but nevertheless concluded that Pedelose's allegations were not consistent with records following her surgery. Tr. 98.
>
> An ALJ's credibility assessment is generally to be accorded great weight and deference. However, in this instance, the ALJ's credibility assessment is not sufficiently clear to allow for a determination as to whether the credibility assessment is supported by substantial evidence.

(Doc. 16 at 37–38).

I respectfully disagree with the R&R on this score and conclude that there is substantial evidentiary support for the ALJ's credibility determination.

First, the ALJ found that the treatment record did not support "the continuing degree of limitation and pain" that Pedelose attributed to her shoulder condition. (Doc. 10 at 101). Indeed, several weeks after the surgery, Pedelose's doctor observed that she was making "great gains" in physical therapy, and Pedelose's range of motion in her right shoulder was normal. (*Id.* at 650). A subsequent treatment note explained that Pedelose was "doing well," had good range of motion and strength in her right shoulder, and could begin trying to strengthen the should via physical therapy. (*Id.*).

Second, the ALJ doubted that Pedelose's "lumbar spinal condition does not cause disabling limitations." (*Id.* at 102). There was a substantial basis in the record for that finding: 1) February, 2013, x-rays of Pedelose's lumbar spine showed "stable findings"; 2) Pedelose acknowledged in September, 2013 that the radiculopathy in her left leg was "much better"; and 3) while Pedelose reported having pain in March, 2014, she had a normal gait and "no mobility limitations." (*Id.* at 102, 653, 676).

Third, the ALJ reasonably interpreted the evidence respecting the "mild abnormalities" in the L-5 area of Pedelose's back. (*Id.* at 102). On the one, the ALJ acknowledged, the EMG studies did show "mild abnormalities in the L5 area of the paraspinous muscles on the right side of uncertain significance that may reflect evidence of surgery or posterior L5 radiculopathy." (*Id.*). But on the other, a neurologist who evaluated Pedelose's conditioned "saw no neuropathy and indicated he could not explain the claimant's symptoms based on the data of the study[.]" (*Id.*).

Given the inconclusive nature of the EMG studies, the neurologist's inability to link Pedelose's physical condition to the symptoms she described, and the record as a whole, it was reasonable for the ALJ to discredit Pedelose's testimony that her back condition essentially disabled her.

Fourth, the ALJ noted that, despite suffering from carpal tunnel syndrome, Pedelose had "normal strength and reflexes" in her right wrist. (*Id.* at 103). She underwent surgery on her right hand, which was "successful," and the ALJ found that "there is no evidence to indicate that [Pedelose] will not improve following surgery" on her left hand in July, 2014. (*Id.*).

For all these reasons, I believe that there was substantial evidence to support the ALJ's credibility determination. That is not to say the evidence compelled the conclusion that the ALJ reached, or that the ALJ's decision is unimpeachable. It is simply to say that the decision fell within the "zone of choice within which the decisionmaker[ ] can go . . . without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)

**Conclusion**

It is, therefore

ORDERED THAT:

1.  The Commissioner's objections to the Report and Recommendation (Doc. 17) be, and the same hereby are, sustained; and

2.  The Commissioner's decision denying plaintiff's application for benefits be, and the same hereby is, affirmed.

So ordered.

/s/ James G. Carr<br>Sr. U.S. District Judge